# EXHIBIT A

2/21/2024 9:00 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-001136
Selina Hamilton

D-1-GN-24-001136

**Cause No. _____**

| | | |
|---|---|---|
| R.F., a Minor Child, by and through Briana Rodriguez, as Next Friend, | § § § | In the District Court |
| *Plaintiff,* | § § | |
| vs. | § § | Travis County, Texas |
| The J.M. Smucker Company, | § § | 455TH, DISTRICT COURT |
| *Defendant.* | § § | _____ Judicial District |

## PLAINTIFF'S ORIGINAL PETITION

**To the Honorable Judge of Said Court:**

COMES NOW, R.F., a Minor Child (hereinafter referred to as "Plaintiff"), by and through the Next Friend, Briana Rodriguez, and by and through undersigned counsel, and respectfully files this Original Petition against The J.M. Smucker Company (hereinafter referred to as "Defendant").

In support hereof, Plaintiff would state and show unto this Honorable Court the following:

### I. Discovery Control Plan

1. Plaintiff intends to conduct discovery under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

Plaintiff's Original Petition
Page 1 of 16

Copy from re:SearchTX

## II. Parties

2.    Plaintiff R.F. is a minor child. He resides in and is a citizen of the State of Texas. He appears in this action through his Next Friend, Briana Rodriguez, who is his biological mother.

3.    Defendant The J.M. Smucker Company is incorporated in Ohio and has its company headquarters in Orrville, Ohio. Service of process upon this Defendant may be had by serving its registered agent for service, CT Corporation System located at 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601-1840.

## III. Tex. R. Civ. P. 47

4.    Plaintiff prefers to have the jury determine the fair amount of compensation for Plaintiff's damages. It is too early in the case to be assessing the full nature and scope of Plaintiff's damages, and Plaintiff places the decision regarding the amount of compensation to be awarded in the jury's hands.

5.    Rule 47 of the Texas Rules of Civil Procedure, however, *requires* Plaintiff to provide a statement regarding the amount of monetary relief sought. Accordingly, Plaintiff states that monetary relief of over $1,000,000, in amount to be determined by the jury, is being sought.

## IV. Misnomer, Alter-Ego, and/or Assumed/Common Names

6.    Pursuant to the Texas Rules of Civil Procedure and/or any applicable Texas statute, Plaintiff hereby gives notice that Defendant is being sued in all of its business or common names regardless of whether such businesses are partnerships,

Plaintiff's Original Petition
Page 2 of 16

Copy from re:SearchTX

unincorporated associations, individuals, entities, limited liability companies, or private corporations. Furthermore, in the event that any parties are misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or parties are/were "alter egos" of parties named herein.

## V. Facts

7.    The J.M. Smucker Company manufactures, labels, markets, and sells Jif® peanut butter products.



https://www.jmsmucker.com/brands-you-love/consumer-foods.

8.    Jif® peanut butter is one of the nation's leading producers of what is supposed to be high quality, safe peanut butter. Consumers expect, when they purchase or eat Jif® peanut butter products, they are purchasing or eating safe and healthy peanut butter. This is especially true of Jif® peanut butter products, which are advertised as using high quality products.

Plaintiff's Original Petition
Page 3 of 16

Copy from re:SearchTX

**Is Jif® peanut butter healthy?**

We pride ourselves on offering quality products with the best ingredients. To see our nutrition facts, please visit each product listing for nutritional information.

https://www.jif.com/about-us/faq

9.    Unfortunately for Plaintiff, Jif® peanut butter products sold with the lot codes 1274425 - 2140425 with the first seven numbers ending in "425" were contaminated with *Salmonella*.

10.    On May 20, 2022, The J.M. Smucker Company recalled Jif® peanut butter products sold in the United States. As the recall explained "*Salmonella* is an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems. Healthy persons infected with *Salmonella* often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with *Salmonella* can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (i.e., infected aneurysms), endocarditis and arthritis."

11.    The J.M. Smucker Company recalled over 40 Jif® peanut butter products that were contaminated by *Salmonella*.

12.    Plaintiff did not know, and did not have a reason to know, that the Jif® peanut butter he ate was contaminated with *Salmonella*. Consumers expect the food they purchase or eat to be safe for consumption and not contaminated by an organism "which can cause serious and sometimes fatal infections."

Plaintiff's Original Petition
Page 4 of 16

Copy from re:SearchTX

13. The J.M. Smucker Company manufactures, labels, and sells Jif® peanut butter products.

14. The Jif® peanut butter products being recalled are identified by lot code.



**Case Count Map Provided by CDC**

https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022

15. Plaintiff ate peanut butter out of a jar with a lot number matching the contaminated lots identified by the FDA's safety alert on May 20, 2022, and suffered injuries and damages.

16. On May 20, 2022, The J.M. Smucker Company recalled Jif® peanut butter products.

## VI. Cause(s) of Action as to Defendant

*A. Breach of Express Warranty*

17. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

Plaintiff's Original Petition
Page 5 of 16

Copy from re:SearchTX

18.    Plaintiff's claims include all of what has previously been mentioned.

19.    The Jif® peanut butter products is a "good" under all relevant laws.

20.    As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Jif® peanut butter it makes and sells is safe for its intended use.

21.    Defendant breached express warranties about the Jif® peanut butter and its qualities because Defendant's peanut butter contained *Salmonella* unsafe for consumption at the time of purchase and the peanut butter did not conform to Defendant's affirmations and promises described above.

22.    Plaintiff would not have eaten the Jif® peanut butter if it was known the true nature of the harmful *Salmonella* contamination.

23.    As a result of Defendant's breach of warranty, Plaintiff has suffered injuries and damages.

## B. *Breach of Implied Warranty*

24.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

25.    In addition to and/or in the alternative to the claims asserted herein, the J.M. Smucker Company is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Jif® peanut butter products.

Plaintiff's Original Petition
Page 6 of 16

Copy from re:SearchTX

26.   The Jif® peanut butter products are "goods" under the relevant laws, and The J.M. Smucker Company knew or had reason to know of the specific use for which the Jif® peanut butter products, as goods, were purchased.

27.   The J.M. Smucker Company entered into agreements with retailers to sell the Jif® peanut butter products to be used by Plaintiff for personal use.

28.   The implied warranty of merchantability included with the sale of each Product means that The J.M. Smucker Company guaranteed that the Products would be fit for the ordinary purposes for which peanut butter is used and sold, and were not otherwise injurious to consumers.

29.   The J.M. Smucker Company breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of being consumed by children because the Jif® peanut butter products result in *Salmonella* infections. Therefore, the Products are not fit for their particular purpose of safely being consumed by children.

30.   As a result of Defendant's breach of warranty, Plaintiff has suffered injuries and damages.

## C. *Negligence*

31.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

32.   In addition to and/or in the alternative to the claims asserted herein, Defendant was negligent.

Plaintiff's Original Petition
Page 7 of 16

Copy from re:SearchTX

33. Nothing should be more important to companies that design, manufacture, and sell products than consumer safety.

34. Defendant, directly or indirectly, caused Jif® peanut butter products to be sold, distributed, marketed, promoted, and/or consumed by Plaintiff.

35. At all times relevant to this litigation, Defendant owed a duty to Plaintiff to exercise reasonable care in its designing, marketing, supplying, packaging, promoting, and selling Jif® peanut butter products, including the duty to prevent *Salmonella* contamination of the Jif® peanut butter products.

36. Defendant also owes a duty to Plaintiff to manufacture, distribute, and sell Jif® peanut butter products that are safe and fit for human consumption, meaning without *Salmonella*.

37. Defendant breached its duty to design, manufacture, distribute, and sell Jif® peanut butter products that are safe and fit for human consumption when it manufactured, distributed, and sold Jif® peanut butter products contaminated with *Salmonella*.

38. Despite the ability and means of the Defendant to design, manufacture, distribute, and sell Jif® peanut butter products without *Salmonella*, Defendant failed to do so. Indeed, Defendant wrongfully produced, manufactured, distributed, and sold Jif® peanut butter products that were unsafe and unfit for human consumption.

39. Defendant's negligence includes, but is not limited to, one or more of the following, non-exhaustive list:

    a. Selling and/or distributing Jif® peanut butter products contaminated with *Salmonella*;

Plaintiff's Original Petition
Page 8 of 16

Copy from re:SearchTX

b.    Selling and/or distributing Jif® peanut butter products while negligently and/or intentionally concealing the *Salmonella* contamination;

c.    Failing to promptly notify Plaintiff of the *Salmonella* contamination of Jif® peanut butter products; and/or

d.    Systematically failing to promptly notify the consuming public of the *Salmonella* contamination of Jif® peanut butter products.

40.    As a direct and proximate result of Defendant's breach of duty by manufacturing, distributing, and selling *Salmonella* contaminated Jif® peanut butter products, Plaintiff has suffered injuries and damages.

## D. *Negligent Failure to Warn*

41.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

42.    In addition to and/or in the alternative to the claims asserted herein, Defendant owed Plaintiff a duty of care and to warn consumers of any risks associated with the Jif® peanut butter products.

43.    Defendant knew or should have known of the contamination of *Salmonella* within the Jif® peanut butter products but failed to want Plaintiff.

44.    Defendant's breach of duty caused Plaintiff injuries and damages.

## E. *Product Liability/Design Defect*

45.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

Plaintiff's Original Petition
Page 9 of 16

Copy from re:SearchTX

46.    In addition to and/or in the alternative to the claims asserted herein, Defendant owed a duty to Plaintiff to design the Jif® peanut butter products in a reasonable manner.

47.    The design of the Jif® peanut butter products was defective and unreasonably dangerous, causing *Salmonella* infections.

48.    The design of the Jif® peanut butter products caused it to be not fit, suitable, or safe for their intended purpose. The dangers of the Jif® peanut butter products outweighed the benefits and rendered the Jif® peanut butter products to be unreasonably dangerous.

49.    There are other peanut butter products that do not cause *Salmonella* infections.

50.    The risk/benefit profile of the Jif® peanut butter products was unreasonable, and the Jif® peanut butter products should not have been sold in the market.

51.    The Jif® peanut butter products did not perform as a reasonable consumer would expect.

52.    The Defendant's defective design of the Jif® peanut butter products was the proximate cause of the injuries and damages to Plaintiff.

*F.  Implied Warranty of Merchantability*

53.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

54.    In addition to and/or in the alternative to the claims asserted herein, Defendant is a merchant engaging in the sale of goods to Plaintiff and other consumers.

Plaintiff's Original Petition
Page 10 of 16

Copy from re:SearchTX

55. There was a sale of goods from Defendant to Plaintiff.

56. As the developer, manufacturer, marketer, distributor, and/or seller of the defective Jif® peanut butter products impliedly warranted to Plaintiff that the Jif® peanut butter products were fit for their intended purpose in that they would be safe for Plaintiff to consume.

57. Contrary to these representation and warranties, the Jif® peanut butter products were not fit for their ordinary use, and did not conform to Defendant's affirmations of fact and promises because use of the Jif® peanut butter products was accompanied by the risk of adverse health effects that do not conform to the packaging and consumer standards.

58. Defendant breached the implied warranty in the contract for the sale of Jif® peanut butter products by knowingly selling to Plaintiff a product that Defendant knew would expose Plaintiff to significant health risks, thus meaning Defendant knew that the Jif® peanut butter products were not fit for their intended purpose.

59. Defendant was on notice of this breach, as it was aware of the adverse health effects caused by *Salmonella* in the Jif® peanut butter products.

60. Plaintiff did not receive the goods as bargained for because the goods were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

61. Plaintiff used the Jif® peanut butter products in the ordinary manner in which such products are intended to be used.

Copy from re:SearchTX

62. The Jif® peanut butter products were defective when they left the exclusive control of Defendant

63. The Products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff did not receive the goods bargained for.

64. As a result of the defect in the Jif® peanut butter products, Plaintiff has suffered injuries and damages.

## G. Product Liability/Failure to Warn

65. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

66. In addition to and/or in the alternative to the claims asserted herein, Defendant owed a duty to Plaintiff to design the Jif® peanut butter products in a reasonable manner.

67. Defendant had a duty to warn Plaintiff regarding the Defect and the true risks associated with the Jif® peanut butter products.

68. Defendant was in a superior position to know of the *Salmonella* contamination, yet, as outlined above, chose to do nothing when the defect became known to them.

69. Defendant failed to provide adequate warnings regarding the risks of *Salmonella* within the Jif® peanut butter products after knowledge of the defect was known only to them.

70. Defendant had information regarding the true risks but failed to warn Plaintiff.

Plaintiff's Original Petition
Page 12 of 16

Copy from re:SearchTX

71. Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

72. Plaintiff and members of the Classes would not have consumed the Jif® peanut butter products if they knew of the Defect and the risks of consuming the Products.

73. The *Salmonella* contamination proximately caused Plaintiff's injuries and damages.

## VII. Gross Negligence

74. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

75. Plaintiff's claims include all of what has previously been mentioned.

76. The acts and/or omissions described herein, when viewed from Defendant's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff and others. Defendant had actual, subjective awareness of this risk, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff and others.

77. Plaintiff would further show that the injuries and damages that Plaintiff sustained as a result of the incident in question were caused by the gross negligence of Defendant acting by and through their employees, agents, drivers, officers, and/or representatives in the course of employment for said Defendant.

Copy from re:SearchTX

78.   Plaintiff would further show that Defendants ratified and failed to repudiate their agent's gross negligence and/or was grossly negligent.

79.   As such, Defendant is grossly negligent and should be subjected to exemplary damages.

80.   Plaintiff reserves the right to amend this Petition by adding additional facts, counts, and/or cause(s) of action as discovery continues.

## VIII. Damages to Plaintiff

81.   As a result of the acts and/or omissions of Defendant, Plaintiff was injured, and incurred damages.

82.   Plaintiff accordingly prays for damages in the past; damages which, in all reasonable probability, will be suffered in the future; exemplary damages; *and,* any and all other damages to which Plaintiff is justly entitled as shown through the course of this proceeding.

83.   The above and foregoing acts and/or omissions of Defendant, resulting in the injuries to Plaintiff, have caused actual damages to Plaintiff in an amount in excess of the minimum jurisdictional limits of this Court.

## IX. Intent to Use Defendant's Documents

84.   In accordance with and pursuant to the Texas Rules of Civil Procedure, Plaintiff hereby notifies Defendant that any and all documents produced to Plaintiff by Defendant in response to written discovery requests may be used at any pretrial proceeding, as well as entered into evidence at the final trial of this cause, and are considered authenticated as to producing parties by the fact of production itself.

Plaintiff's Original Petition
Page 14 of 16

Copy from re:SearchTX

## X. Jury Demand

85.  Plaintiff requests a jury trial according to the Texas Rules of Civil Procedure, and tenders the appropriate jury fee.

## XI. Reservation of Rights

86.  The above allegations against Defendant are made acknowledging that investigation and discovery, although undertaken, are continuing in this matter. As further investigation and discovery are conducted, additional facts may be uncovered that necessitate further, additional, and/or different allegations, including the potential of adding additional parties to the case or dismissing parties from the case. The right to do so, under Texas law, is expressly reserved.

## XII. Conclusion and Prayer

87.  For the reasons presented herein, Plaintiff prays that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment against Defendant for:

    a.    actual damages above the jurisdictional minimum of the Court, further outlined herein;

    b.    prejudgment and post-judgment interest at the maximum legal rate provided by law;

    c.    costs of suit;

    d.    exemplary damages; and

    e.    all other relief, general and special, to which Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

Plaintiff's Original Petition
Page 15 of 16

Copy from re:SearchTX

**Herrman & Herrman, PLLC**


  /s Andrew G. Counts
Andrew G. Counts (Lead Counsel)
State Bar No. 24036408
ACounts@HerrmanandHerrman.com
1201 3rd Street
Corpus Christi, Texas 78404
(361) 882-4357 – Phone
(361) 883-7957 – Fax

**Attorneys for Plaintiff**

Plaintiff's Original Petition
Page 16 of 16

Copy from re:SearchTX